HON. JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| TOBY MEAGHER, through his Power of Attorney, GERALDINE MCNAMARA, | NO. 2:19-CV-00259 JLR |
| Plaintiff, | FIRST AMENDED COMPLAINT |
| v. | |
| KING COUNTY, and OFFICERS RODNEY PRIOLEAU, BRIAN O'FARRELL, THERON MCCAIN JR., RONNY LEE KINTNER, J. GARCIA, AND DEFENDANT DOES 1 – 10, | |
| Defendants. | |

Plaintiff Toby Meagher, through his Power of Attorney, Geraldine McNamara, and by and through PETERSON | WAMPOLD | ROSATO | FELDMAN | LUNA, alleges as follows:

## 1.    INTRODUCTION

1.1.    Plaintiff Toby Meagher, through his Power of Attorney, Geraldine McNamara (Mr. Meagher's mother), brings this action for damages against King County and the individually named officers and Defendant Does, all of whom are employees of the King County Department of Adult and Juvenile Detention (KCDOAJD).  The Defendants here failed to protect Mr. Meagher from the obvious and foreseeable attack by a fellow inmate, despite knowing about the high risk the inmate posed to *every* inmate and to Mr. Meagher – who suffers from a schizoaffective disorder and schizophrenia – in particular.

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

1.2.     On July 15, 2018, King County Jail inmate Troy Leae beat his cellmate, Plaintiff Toby Meagher, to a bloody pulp.  Mr. Leae bashed Mr. Meagher's face against the cell's steel sink and stomped on his head, which bounced hard against the concrete floor.  Mr. Leae continued beating Mr. Meagher even after his body lay unconscious beneath the flurry of punches, stomps, and kicks, and even after several KCDOAJD officers, weapons in hand, ordered Mr. Leae to stop. It was not until Mr. Leae was tackled and tased that he relented against Mr. Meagher, and instead turned his rage against the interfering officers.  The photos below give a glimpse into the brutality of the assault:





Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

1.3.    As the pictures suggest, the beating left Mr. Meagher with debilitating physical injuries: broken bones in his face, damaged facial nerves, broken teeth, lacerations and bruises all over his battered body and – worst of all – a traumatic brain injury.  His brain injury and the trauma associated with the attack itself not only caused Mr. Meagher immediate physical and psychological harm, they also exacerbated his mental disorder and have deeply affected his ability to communicate.  While these symptoms are well-documented in Mr. Meagher's medical records, they are best captured by audio recordings of Mr. Meagher from before and after the incident.  In a voicemail recording left by Meagher just before he was attacked (which can be heard at https://vimeo.com/312845736, using password "meagherassault"), Mr. Meagher's voice was clear, quick, and coherent, as he asks his mother to look up a telephone number for him.  After the attack, Mr. Meagher called his mother again (this voicemail can be heard at https://vimeo.com/312846078, using password "meagherassault"); in that recording his barely audible voice stammers in a struggling drone and he is virtually incoherent.  While Mr. Meagher's ability to speak has improved slightly since then, he still struggles to string a sentence together.  He spends much of his time confused and upset, constantly revisiting the attack itself, and plagued by nightmares, insomnia, and paranoid thoughts that center specifically around Mr. Leae and the attack.  The lasting impact of this horrific beating on Mr. Meagher's mental condition is not yet known.

1.4.    The assault that caused these horrific injuries was not an unpreventable assault by an unpredictable inmate.  To the contrary, it was so foreseeable that just nine months earlier, KCDOAJD employees changed Mr. Leae's housing classification to "ultra security," the most rigorous security classification available to jail inmates, based on Mr. Leae's history of violence against fellow inmates.  "Ultra security" inmates, according to KCDOAJD's own policies, require separate housing.  This change in classification, which followed an especially violent and random attack by Mr. Leae against a fellow inmate, was intended to ensure that Mr. Leae would be physically separated from other inmates, to whom he posed a constant and serious threat of

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

1   physical violence. Despite Mr. Leae's "ultra security" classification and his known history of

2   unprovoked violence against inmates, the Defendants here failed to house Mr. Leae separately

3   from other inmates as required by his classification and in accord with his known history of

4   violence against inmates.

5        1.5.    Instead, KCDOAJD employees locked the mentally ill Mr. Meagher in the same

6   cell as the homicidal Mr. Leae, walled in by cement, steel and glass, a decision that effectively

7   granted Mr. Leae free reign over his vulnerable victim.  Such conduct, by the very individuals

8   tasked with ensuring Mr. Meagher's safety within the jail and in light of the foreseeability and

9   preventability of the attack, was far beyond negligence – it was an act of reckless disregard for Mr.

10  Meagher's safety and a blatant violation of KCDOAJD policy and Mr. Meagher's most basic due

11  process rights.

12       1.6.    The indifference shown to Mr. Meagher's rights is exacerbated by the fact that

13  KCDOAJD employees not only improperly housed Mr. Leae; its employees also improperly

14  classified and housed Mr. Meagher.  When Mr. Meagher arrived at the King County Jail in July

15  2018, he had been transferred from Western State Hospital, a State-run mental hospital where Mr.

16  Meagher had undergone an evaluation to determine his mental competency to stand trial, given his

17  decades-long diagnosis of schizoaffective disorder.  In light of his diagnosis and ongoing mental

18  health issues, KCDOAJD's own policies – not to mention any application of reasonable conduct

19  – also required the King County Jail employees to house Mr. Meagher in a cell separate from other

20  offenders, especially offenders likely to prey upon his particular vulnerabilities, like Mr. Leae.

21  Had they housed Mr. Meagher appropriately, Mr. Leae could never have assaulted him.  Their

22  failure to do so represents yet another negligent act by KCDOAJD employees that was a cause of

23  extreme harm to Mr. Meagher.

24       1.7.    But KCDOAJD's misconduct did not end with the improper classification and

25  housing of each of these inmates under the circumstances, given Mr. Leae's violent history and

26  Mr. Meagher's urgent mental health needs.  KCDOAJD also had additional opportunities to

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

1  prevent the assault before it occurred, but took no action to do so.  After all, Mr. Leae was housed

2  together with Mr. Meagher for several days before his final assault.  During that time, Mr. Meagher

3  made repeated requests to KCDOAJD employees to be transferred away from Mr. Leae because

4  he was afraid of Leae and believed that he was going to be attacked.  These requests were ignored

5  by the jail officers, including King County Jail Officer J. Garcia, who made only a passing

6  reference to the request by Mr. Meagher in his supplemental report following the attack.

7       1.8.   Had Officer J. Garcia or any of the other officers who heard Mr. Meagher's pleas

8  acted with anything other than reckless disregard for his safety and his due process rights, they

9  would have either (1) immediately separated Mr. Meagher from Mr. Leae, (2) informed themselves

10  of the housing and classification errors made with respect to the confinement of each inmate and

11  then separated them, or (3) informed their supervisors, who would have discovered the same and

12  then separated the two inmates.  But Officer J. Garcia and his fellow officers did nothing.  This

13  failure permitted the horrific assault to occur even in the face of repeated warnings and requests

14  from Mr. Meagher that he was in fear of Mr. Leae and needed to be transferred.

15       1.9   The misclassifications that resulted in housing Mr. Leae together with Mr. Meagher

16  were not only acts of negligence and serious violations of Mr. Meagher's civil rights, they were

17  also a breach of the contract between King County and the ACLU of Washington entitled

18  *Settlement Agreement By and Between ACLU of Washington, Calvin Hammer, Edward Boekel,*

19  *Melton Atkins, and Wilborn Kelley Stevens*, known commonly as the "Hammer Agreement."  The

20  Hammer Agreement required King County to properly identify and classify inmates with "records

21  of violent, assaultive or ongoing aggressive behavior," to use that classification to impose an

22  "appropriate initial housing assignment consistent with the security requirements of the inmate in

23  question," and to ensure that any movement of an inmate from one cell to another is also

24  "appropriate under the circumstances."  Hammer Agreement, §§ 3.1.2-3.3.  Through the conduct

25  of its officers, King County breached this agreement.  As a KCDOAJD inmate, Mr. Meagher was

26  a third party beneficiary of this agreement, and its breach caused him significant and permanent

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

1   harm.

2       1.9.    Mr. Meagher, through his Power of Attorney – his mother Geraldine McNamara –

3   seeks redress against King County and its individual employees responsible for failing to protect

4   him from this obvious and foreseeable harm.  Defendant King County was made aware of

5   Plaintiff's claims on November 20, 2018, but has made no effort to resolve this claim or even reach

6   out to the victim or his family, compelling Plaintiff to file suit against it and the individual

7   Defendants.  The particulars of Mr. Meagher's claims are established in detail below.

8                          **2.  PARTIES**

9       2.1.    Defendant King County is a political subdivision of the State of Washington.

10   Among other things, King County operates the King County Department of Adult and Juvenile

11   Detention (KCDOAJD), which provides jail services for inmates confined in the King County Jail.

12       2.2.    Defendants Rodney Prioleau, Brian O'Farrell, Theron McCain Jr., Ronny Lee

13   Kintner, and Officer J. Garcia are KCDOAJD employees who, at all times relevant hereto, were

14   acting under color of law as employees and agents of King County, through their employment as

15   jail workers for the KCDOAJD.

16       2.3.    Defendant Does 1-10 are also KCDOAJD employees who, at all times relevant

17   hereto, were acting under color of law as employees and agents of King County, through their

18   employment as jail workers for the KCDOAJD.  Plaintiff is not yet aware of the identities of the

19   individual KCDOAJD employees responsible for the classification and housing of Troy Leae, or

20   the Shift Commanders responsible for properly housing Troy Leae and Plaintiff Toby Meagher.

21   Nor is Plaintiff currently aware of the identity of the additional KCDOAJD employees – besides

22   Defendant Officer J. Garcia – who heard Plaintiff Meagher's request to be moved to a separate

23   cell to be protected from Leae.  Thus, these Defendants will be referred to herein as Defendant

24   Does 1-10.  Once the identity of each is ascertained through discovery, Plaintiff will amend the

25   complaint to reflect the specific identity of each.

26

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

2.4.     Plaintiff Toby Meagher is a resident of King County.  Plaintiff Meagher brings claims individually through his power of attorney, Geraldine McNamara.

### 3.  JURISDICTION AND VENUE

3.1.     This Court has both personal and subject matter jurisdiction and venue is properly in King County.

3.2.     A claim for damages against King County was properly filed with the King County Clerk of the Council on November 20, 2018.  More than 60 days have elapsed since the claim was filed and all other prerequisites to suit have been satisfied.

3.3.     Mr. Meagher brings these claims under Washington law and 42 U.S.C. § 1983.

### 4.  STATEMENT OF FACTS

4.1.     On July 2, 2018, 43-year-old Toby Meagher, the Plaintiff here, was transferred from Western State Hospital to the King County Jail to await the disposition of a criminal charge in King County Superior Court and to address his competency status.  Mr. Meagher measured 5'9" and weighed 145 pounds.  Before his arrival at King County Jail, he had been institutionalized at Western State Hospital on five separate occasions to address his schizoaffective disorder, a serious mental health disability that has affected Mr. Meagher most of his adult life.  The mental health experts who had evaluated him at Western State Hospital found that Mr. Meagher's competence to stand trial could not likely be restored, given his psychiatric disability.

4.2.     Given Mr. Meagher's disability, KCDOAJD – according to the reasonable application of its own policies – was required to provide separate housing for him away from the general population of inmates and with special accommodations for his illness.  KCDOAJD's policy requires "classification staff and corrections staff to identify appropriate inmate housing assignments within designated medical and psychiatric housing."  *See* KCDOAJD Policies 6.01.012 and 6.03.003, regarding "Critical Inmate Placement."  King County defines a mental disability as "[a]ny mental or psychological disorder…" and provides for separate housing for inmates with "psychiatric" issues.  *See* Policies 6.01.012 and 6.03.001.

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

4.3.     But in violation of these internal governmental policies, the Classification Program Specialists (CPSes), the CPS Supervisors, and the Shift Commanders responsible for proper classification and housing of inmates at the King County Jail placed Mr. Meagher in a cell with other inmates that eventually included the homicidal Mr. Leae.   King County Jail records indicate that the CPS who made the decision regarding the classification and housing of Mr. Meagher was Defendant Theron McCain, Jr.  The CPS Supervisors, who made the same decision, were Ronny Lee Kintner and Brian O'Farrell.  The Shift Commanders, also responsible for proper classification and housing, are not yet identified, and remain Defendant Does 1-10 until their identification through discovery, at which point Plaintiff will amend the complaint.

4.4.     A few days before July 15, 2018, inmate Troy Leae was placed in the same cell as Mr. Meagher.  Mr. Leae was a 5'11", 240-pound inmate (much larger than the 145-pound Mr. Meagher), who was being held on assault charges and had a long and documented history of violence.  On August 6, 2017, Mr. Leae broke out of restraints at Harborview Medical Center, and attacked several Harborview employees, knocking one unconscious with a punch to the face.  Then he punched a computer monitor, bending it in half.   Seattle Police Department's Records Management System's printout for Mr. Leae includes the following admonition to other officers: "WARNING [MR. LEAE] HAS BEEN IDENTIFIED AS A VIOLENT OFFENDER OR A SERIOUS THREAT TO LAW ENFORCEMENT… USE EXTREME CAUTION IN APPROACHING THIS INDIVIDUAL… VIOLENT PERSON… VIOLENT TENDENCIES…."

4.5.     Mr. Leae's history of violence also included an assault against an inmate that occurred on October 28, 2017.  During that incident, Mr. Leae was in a dayroom of the King County Jail when he suddenly attacked fellow inmate Jeremiah Sullivan.  The Certification for Determination of Probable Cause signed by a King County Jail Sergeant describes the incident as follows:

> At 1900 hours, Officer Johnston heard yelling coming from the dayroom of Lower C tank. Officer Johnston observed Sullivan, Jeremiah 217028816, on the floor curled up in the fetal position while Leae, Troy 217023211 was kicking and punching with closed fists, Sullivan in the upper torso and head/face area as he

FIRST AMENDED COMPLAINT - 8
NO: 2:19-CV-000259

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE: (206) 624-6800
FAX: (206) 682-1415

1  attempted to cover his face with his arms for protection. Leae continued to circle
2  around Sullivan kicking and punching him in the upper torso and head/face area as
   Sullivan used his feet to move his body around in a circle to attempt to spin away
3  from Leae's kick and punches. Leae continued to ignore directives from Officer
   Johnston to stop assaulting Sullivan.

4  As staff responded to the assault, the dayroom door is opened and it is visible in the
   video the two red laser dots from an energized Taser being aimed at Leae and he
5  stops his assault and walks off away from Sullivan.

6  A review of the facility video shows that Leae comes from behind Sullivan and
   starts his assault by punching him in the head in an unprovoked attack.
7  Sullivan was bleeding from the nose and mouth and received multiple scrapes and
   contusions. Based on the information provided above. I am requesting review for
8  the filing of charges of Assault 2nd Degree for Troy Leae's unprovoked attack on
   Jeremiah Sullivan by punching him in the head from behind and then continuing to
9  kick and punch Sullivan in the upper torso, face, and head.

10  Photographs of Mr. Sullivan following the attack capture his face and clothing covered in blood

11  from the unprovoked beating. This attack eventually resulted in one of many criminal assault

12  charges leveled against Mr. Leae.

13      4.6.    After his October 2017 attack against Mr. Sullivan, Mr. Leae's classification status

14  was officially changed to "ultra security" by the Shift Commander at King County Jail "in

15  accordance with [King County Jail] policies" as follows:

16


17  **J** | Shift Commander / CCD Chief of Operations Comments / Chief of Operations/Security

18  Appropriate action taken by staff. Review of video
    clearly indicates a serious unprovoked assault.
19  I/m Leau has a history of unprovoked assaults, gang
    affiliations, psychiatric issues,
20  I/m Leau reclassified as ULTRA security.

21

22

23  **Recommendations, Notifications and/or Referrals:**

    Recommend: (Check all boxes that apply)          Notifications:
24  ☑ Action Taken Appropriate (in accordance with policies)      ☐ Command Staff
    ☐ Remedial Training/Other Action (Attach Separate Report)    ☐ Executive Duty Officer (EDO)
    ☐ Use of Force Preliminary Investigation

25  Reviewed by Shift Commander / Chief of Operations/Security (print and sign)          Date

26  This classification was approved by Major Clark, the Division Major, on October 30, 2017:

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE: (206) 624-6800
FAX: (206) 682-1415

1

2

3

4

5

| ☐ Special Investigations / Criminal Investigations | ☐ Law Enforcement Agency |
| ☐ Internal Investigations Unit | ☐ Force Review Committee |
| ☐ Returned to Shift for Follow-Up | |
| ☐ PREA | *May Clark*                    10/30/17 |
| ☐ Training Unit | Reviewed by Division Major / Division Director/Designee (print and sign)          Date |
| ☐ Policy Unit | |

6    Mr. Leae's "ultra security" classification was accompanied by an admonition that "Jail House

7    Psych" be informed of Mr. Leae's "continued violent behavior and given a strong recommendation

8    for no further group status" in the future.

9         4.7.    King County's intergovernmental policies for its jail define this "ultra security"

10   category as the "highest security and classification management status" applicable to inmates. *See*

11   KCDOAJD Policy 6.03.001.   The classification applies to inmates who pose certain risks,

12   including inmates who have been "assaultive to staff or other inmates." *Id.*  Such inmates must be

13   placed in "restrictive housing," separate from other inmates.   *Id.*  King County Jail's Shift

14   Commander/s are required to "[e]nsure that inmates deemed Ultra Security status are placed into

15   restrictive housing" to protect other inmates and Corrections Program Specialists are required to

16   screen such inmates into such housing.  *Id.*  Further, "Ultra Security status inmates may only be

17   removed by the division major, CPA, or higher authority." *Id.*

18        4.8.    By July of 2018, Mr. Leae was back in King County Jail.  There is no indication

19   that Mr. Leae's classification status was changed since he had attacked Mr. Sullivan in October

20   2017.  Despite Mr. Leae having received a classification as an "ultra security" inmate, the King

21   County Jail records memorializing this classification, and an expressed concern by King County

22   Jail supervisory staff that Mr. Leae's violent propensity posed a life-threatening danger to other

23   inmates, Mr. Leae was apparently returned to the general population.

24        4.9.    According to a King County public disclosure response, Defendant Rodney

25   Prioleau was the CPS tasked with determining the proper housing and classification for Mr. Leae

26   during his July 2018 confinement at the King County Jail.  The identity of his supervisor and the

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

1    Shift Commanders also responsible for Mr. Leae's July 2018 classification and housing are not

2    yet known, and so are referred to herein as Defendant Does 1-10.  Once they are identified, the

3    complaint will be amended to reflect the identity of each.  CPS Prioleau and the pertinent

4    Defendant Does, like all of the KCDOAJD employees discussed here, were KCDOAJD employees

5    working within the scope of their employment and under color of law.  It was the obligation of

6    CPS Prioleau and these Defendant Does, along with the other Defendants, to ensure that Mr.

7    Meagher's rights under Washington law and under the U.S. Constitution were protected, and that

8    he was protected from the foreseeable assaults of other inmates.

9        4.10.   Negligently and in violation of his due process rights, Mr. Meagher was housed

10   together with Mr. Leae, a violent inmate known for randomly attacking his fellow inmates, without

11   regard for the classification status of Mr. Leae.  Mr. Leae had a history of attacking fellow inmates

12   and, according to King County Jail's own records, was considered a dangerous and unpredictable

13   inmate who was required by KCDOAJD's clear policies to be housed separately from other

14   inmates.  Placing Mr. Leae in Mr. Meagher's cell violated these internal governmental policies,

15   was unreasonable and negligent, and violated Mr. Meagher's civil rights.  Further, such conduct

16   showed reckless disregard for Mr. Meagher's safety and constitutional rights.

17       4.11.   Once they were housed together, Mr. Leae began to threaten Mr. Meagher.  Afraid

18   of the much larger, stronger, and more aggressive Mr. Leae, Mr. Meagher repeatedly told

19   Defendant Officer J. Garcia about his concerns, and asked to be moved to another cell.  But Officer

20   J. Garcia refused.  Mr. Meagher also recalls (and later reported) telling other jail officers the same

21   thing, but they have not yet been identified.  Thus, they are referred to as Defendant Does 1-10

22   until their identities are made clear in discovery, at which point Plaintiff will amend the complaint

23   to add their particular identities.

24       4.12.   On July 15, 2018, Mr. Leae predictably carried out his threats and attacked Mr.

25   Meagher in the cell.  One King County Jail officer described the assault as follows:

26          On 7/15/18 at approximately 1358 hours I responded a Code [   ] that was called
            for 4N08UA02. Upon my arrival onto the wing, I was directed up the stairs to UA02

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

1
2
3
4

> by … [Officer Garcia]. I saw Inmate [Leae] repeatedly kicking Inmate Meagher, Toby BA# 217025030 in the ribs and the head.  There was blood all over the cell and Inmate Meagher appeared to be unconscious and he was bleeding heavily from his head. Officer J. Diaz-Flores stood up on the day room table and drew his Taser. When I saw Officer Diaz-Flores do this, I exited the tank and yelled down to the deck officer to pop the door. My reason for having the door popped before a Sgt. responded, was because I believed that Inmate [Leae] would have killed Inmate Meagher because of the viciousness of his attack on Inmate Meagher.

5
6
7
8
9
10

During the attack, Mr. Leae bashed Mr. Meagher's head against the steel sink of the cell and stomped on his head, which bounced against the concrete floor of the cell.  The beating continued even after Mr. Meagher lay unconscious on the floor.  When jail officers finally opened the door and pulled a raging Mr. Leae off of the unconscious Mr. Meagher, some officers were concerned that Mr. Meagher was dead:  the cement floor of the cell and stainless steel sink within the cell were soaked in blood, and Mr. Meagher's face was beaten beyond recognition:

11
12
13
14
15
16
17
18

 

19
20
21
22
23
24

Eventually, Mr. Leae was charged with felony assault by the King County Prosecutor's Office, who simultaneously filed assault charges for Mr. Leae's assault of Mr. Sullivan seven months earlier.  The King County Prosecutor's Office has since given notice of its intent to file either assault in the first degree or attempted murder charges against Mr. Leae for his attack against Mr. Meagher.

25
26

4.13.   Following the attack, the King County Jail's infirmary staff made the decision to transport Mr. Meagher to Harborview Medical Center, where he was treated for a traumatic brain

FIRST AMENDED COMPLAINT - 12
NO: 2:19-CV-000259

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

1   injury, broken bones in his nose and face, broken teeth, nerve damage in his face, and lacerations

2   and bruising all over his body.  Even after Harborview Medical Center returned Mr. Meagher to

3   the jail following treatment, King County Jail returned him for additional treatment at Harborview

4   because of the extent of his injuries.

5        4.14.    Four days after the assault, Defendant Officer J. Garcia admitted in a supplemental

6   report that, on the day of the beating, "Inmate Meagher had used his call button to ask if he could

7   move" to another cell because of concerns with his cellmate, Mr. Leae.  But Officer Garcia –

8   whose report indicates that he knew that Mr. Meagher was "awaiting a psych cell to come

9   available" – refused to accommodate Mr. Meagher's request and failed to inform a supervisor of

10  the request.  As discussed above, Defendant J. Garcia was not the only officer from whom Mr.

11  Meagher sought help before the beating, but Mr. Meagher's requests went unheeded by every

12  KCDOAJD employee who heard them.

13       4.15.    Five days after the assault, Sergeant Craw of the King County Jail wrote a letter to

14  Major Clark of the Jail informing him that, after Mr. Meagher returned to King County Jail from

15  Harborview, Mr. Meagher reported that before the beating he had "told Officers Inmate Leae was

16  going to attack him."  Despite these warnings and requests for a transfer, no King County Jail

17  employee took any steps to properly house Mr. Meagher or otherwise protect Mr. Meagher from

18  this brutal and foreseeable beating.

19       4.16.    In addition to the physical injuries to his face and body, the attack has caused Mr.

20  Meagher to suffer from acute memory problems, altered speech, has greatly exacerbated his

21  confusion, insomnia, and paranoia, and has likely caused him PTSD.  His medical records indicate

22  "significantly reduced intelligibility, impaired comprehension, reduced memory recall and

23  problem solving for safety."  This is best exemplified in two voicemail recordings left by Mr.

24  Meagher before and after the assault.   In the first (which can be heard at

25  https://vimeo.com/312845736, using password meagherassault), Mr. Meagher's voice is clear,

26  quick, and coherent as he asks his mother to look up a telephone number for him.  But in the second

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

recording (this voicemail can be heard at, https://vimeo.com/312846078 using password meagherassault) – left after the beating – Mr. Meagher's voice stammers in a struggling drone and he is virtually incoherent.

4.17.    Further, a video of Mr. Meagher's mental condition after the meeting shows a similar struggle to speak and form ideas (visit https://vimeo.com/312811751, using password meagherassault).  All forms of communication, including his handwriting, have been severely impacted by the injuries that he sustained, and his symptoms from his already-existing mental illness have been worsened by the physical and psychological trauma that he suffered, and continues to suffer, because of this brutal attack.  Indeed, Mr. Meagher's mind was already prone to extreme bouts of anxiety and paranoia – this attack has heightened his symptoms incomparably and has given them a single focus:  Mr. Meagher is perpetually in fear that Mr. Leae or his brother – whom Mr. Meagher believes to be a gang member and criminal – will hunt him down and kill him.  This fear plagues him day and night.

4.18.    By failing to follow KCDOAJD's clear policies regarding the classifying of inmates like Mr. Leae, who was known to pose a high risk to inmates, and who had been classified as an "ultra security" inmate (a classification that expressly precluded KCDOAJD employees from housing Mr. Leae with other inmates), CPS Prioleau, his supervisors, and the Shift Commanders responsible for classifying and housing Mr. Leae here (designated as Defendant Does) acted unreasonably and were negligent, in violation of Washington law.  This negligent failure to protect Mr. Meagher, an inmate in their care and custody to whom they owed a particular duty of care, was a proximate cause of Mr. Meagher's injuries.

4.19.    Similarly, CPS Theron McCain, Jr., CPS Supervisors Ronny Lee Kintner and Brian O'Farrell, and the failure of pertinent Defendant Does (the Shift Commanders also tasked with Mr. Meagher's classification and housing) to properly and reasonably classify and house Mr. Meagher based on his mental health disability separately from other inmates like Mr. Leae, was also negligent conduct in violation of intergovernmental policies and their duty to protect Mr. Meagher,

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

1    an inmate in their care and custody.  Such misconduct proximately caused Mr. Meagher's injuries.

2        4.20.    Additionally, Defendant Officer J. Garcia and pertinent Defendant Does (additional

3    individuals aware that Mr. Meagher had requested to be moved to a separate cell once Mr. Leae

4    was improperly housed with Mr. Meagher), also failed in their duty to protect Mr. Meagher from

5    the obvious risk of injury from his violent cellmate.  Officer Garcia and any other officers who

6    received such notice not only failed to move Mr. Meagher or Mr. Leae to a separate cell in response

7    to Mr. Meagher's requests to be moved away from Mr. Leae, they failed to even consult the records

8    of either inmate in response to the requests by Mr. Meagher or to alert a supervisor of his request.

9    Such simple actions would have – or at least *should* have – alerted the officers of the errors made

10   by the jail's classification and housing unit with respect to the classification of both inmates and

11   of the need to protect Mr. Meagher immediately and – at a minimum – house him in a cell that

12   would accommodate his disability in accord with KCDOAJD's own policies.  This conduct was

13   negligent under Washington law and was a proximate cause of Mr. Meagher's injuries.

14       4.21.    Indeed, all jail officers and employees have a special relationship to the inmates for

15   whom they are responsible, and failing to protect an inmate from an obvious danger like the

16   foreseeable attacks by Mr. Leae is a violation of that duty and relationship under Washington law.

17   The individually named Defendants and pertinent Defendant Does 1-10 here violated that duty,

18   proximately causing Mr. Meagher's injuries.  King County, for its part, is vicariously liable for the

19   conduct of its employees, as described above.

20       4.22.    "Jailers have a duty to protect pretrial detainees from violence at the hands of other

21   inmates…."  *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).  Where a jail officer

22   fails to take measures to protect a pretrial inmate from assaults by other inmates in light of

23   substantial evidence that the inmate is at high risk and the inmate is injured by the officers' failure,

24   the officer or jail employee also violates the inmate's Fourteenth Amendment due process rights,

25   forming the basis for a failure-to-protect claim under 42 USC § 1983.

26

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

4.23.    In violation of his Fourteenth Amendment due process rights, the conditions of Mr. Meagher's confinement at the King County Jail presented a substantial risk of serious harm to him insofar as he was confined in close proximity to an unstable and violent inmate with a history of randomly attacking fellow inmates.  The danger was known and appreciated by Defendants.  The CPS Defendants, the CPS supervisor Defendants, and pertinent Doe Defendants (individuals who were tasked with ensuring the proper classification and housing of Mr. Meagher and Mr. Leae) violated Mr. Meagher's due process rights by housing Leae in the same cell as Mr. Meagher.  The CPSes, their supervisors, and the pertinent Shift Commanders here were aware of the clear and present danger to Mr. Meagher, but disregarded the danger and failed to take appropriate steps required by the Fourteenth Amendment due process clause to protect inmates from the foreseeable attacks by other inmates, causing Mr. Meagher's injuries.  Under *Castro*, this conduct constitutes a Fourteenth Amendment failure to protect claim under 42 USC § 1983.

4.24.    Further, because Mr. Leae's jail records were replete with warnings and orders that he not be housed with another inmate because of his violent tendencies, there is far more than "substantial evidence that a reasonable officer in the circumstances would have appreciated the high degree of risk involved and that the officers' failure to take reasonable measures" to protect Mr. Meagher, also justifying a Fourteenth Amendment claim under 42 U.S.C. § 1983.  *See Castro*, 833 F.3d at 1071-2.

4.25.    Additionally, the actions of Officer J. Garcia and pertinent Defendant Does (individuals who failed to take any action once Mr. Meagher asked to be transferred) should have been informed by the surrounding circumstances, Mr. Meagher's own pleas, Mr. Leae's jail record history and classification, regarding the danger that Mr. Meagher was in while being housed with Mr. Leae, and should have protected him.  These facts are not only evidence of negligence, they also form the basis for a separate failure to protect claim under 42 U.S.C. § 1983.  Officer J. Garcia and any pertinent Defendant Does who failed to take any action once Mr. Meagher informed them that he needed to be transferred, failed to appreciate the high degree of risk involved even though

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

1   it was obvious and the attack was foreseeable.  Their failure to appreciate this risk and take

2   reasonable measures to protect Mr. Meagher even after he informed officers of his concerns, was

3   another proximate cause of his injuries.  This failure was a violation of Mr. Meagher's due process

4   rights, and forms the basis for a separate claim under 42 U.S.C. § 1983.

5        4.26.   The conduct of CPS Rodney Prioleau and CPS Theron McCain, Jr., CPS

6   Supervisors Ronny Lee Kintner, Brian O'Farrell, Officer J. Garcia and Defendant Does 1-10, as

7   described above, shows reckless disregard toward Mr. Meagher's safety and complete indifference

8   to his constitutional rights.  Such conduct also warrants punitive damages against each individual

9   Defendant and pertinent Defendant Does.

10       4.27    Additionally, KCDOAJD's classification policies discussed above were initiated as

11  a result of the 1989 "Hammer Agreement," a settlement agreement that King County reached with

12  the ACLU and several plaintiffs following lawsuits against the county for, among other things,

13  failing to protect inmates from assaults by other inmates.  This agreement remains in place today

14  (and until the foreseeable future), and includes the following language:

15      § 3.1.2 Pre-Classification Identification of Inmates with Records of Violent,
        Assaultive or Ongoing Aggressive Behavior in KCCF [King County
16      Correctional Facility]

17      King County will maintain a procedure to identify and integrate within records
        systems inmates with documented violent, assaultive or ongoing aggressive
18      behavior in KCCF. As part of implementation of this procedure, King County will
        develop a "Disciplinary History Risk Code" to identify inmates with documented
19      histories of such behavior. The Disciplinary History Risk Code will be entered in
        the KCCF information management system. The Disciplinary History Risk Code
20      will be read by a corrections officer during the intake process for each incoming
        inmate. When a positive notation is read in the inmate's Disciplinary History Risk
21      Code, the corrections officer will contact a designated classification specialist for
        review and selection of an appropriate initial housing assignment consistent with
22      the security requirements of the inmate in question.

23      § 3.1.3 Disciplinary Hearings. King County will maintain a procedure to prioritize
        disciplinary infractions to ensure that all serious infractions are heard within the
24      time provided in the American Correctional Association (ACA) standards for local
        jail facilities. King County will make staffing available to ensure that disciplinary
25      hearings are conducted and reported seven days per week. The Hammer Plaintiffs
        will raise no objection to efforts by King County to extend the permissible time
26      frame for conducting disciplinary hearings to reflect that contained in the ACA
        standards.

FIRST AMENDED COMPLAINT - 17
NO: 2:19-CV-000259

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

1

2

3

4

5

6

7

8

9

10

A designated classification specialist will review all serious infraction hearings to identify those inmates whose violent, assaultive or ongoing aggressive behavior in the KCCF warrants the assignment of a positive "Disciplinary History Risk Code." In addition, classification specialists who hear disciplinary infraction cases of lesser severity will forward to the designated classification specialist reports on those inmates whom they believe should be reviewed for consideration for the Disciplinary History Risk Code. King County will ensure that the Disciplinary History Risk Code will be entered into the KCCF information management system.

§ 3.2. <u>Inmate Movement</u>
King County will maintain procedures to ensure that all forms (currently known as Form 571 's), which are used for the movement of inmates by corrections officers without the intervention of classification specialists, will be reviewed by a Sergeant to ensure that movement of the inmate by the corrections officer is appropriate under the circumstances. All such forms will be referred to the Classification Section for review within one shift after the movement has taken place.

11

12

13

14

4.28    By placing Mr. Leae, an inmate with a known "violent" and "assaultive" history in the same cell as Mr. Meagher, King County breached the Hammer Agreement's requirements that individuals like Mr. Meagher be appropriately housed in a cell "consistent with [the inmate's] security requirements." § 3.1.2.

15

16

17

18

19

4.29    King County also breached Hammer Agreement § 3.1.3 because King County failed to adequately review Mr. Leae's "serious infraction hearings" and appropriately determine that his "violent, assaultive or ongoing aggressive behavior in the KCCF" warranted the assignment of a positive "Disciplinary History Risk Code," a determination that would have prevented the housing assignment that allowed the brutal assault.

20

21

22

23

24

4.30    King County also breached § 3.2 of the Hammer Agreement because King County failed to "ensure that movement of" Mr. Leae to Mr. Meagher's cell was "appropriate under the circumstances." Had it done so, Mr. Leae would never have been able to assault Mr. Meagher in the first place because he would not have been placed in a cell together with other inmates, and would especially not have been placed in the same cell as a vulnerable inmate like Mr. Meagher.

25

26

4.31    Because Mr. Meagher was an inmate at King County Jail, he is a third-party beneficiary of the Hammer Agreement. King County's failure to uphold its contractual obligations

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

1    under that agreement were a proximate cause of the assault against Mr. Meagher by Mr. Leae, and

2    thus a proximate cause of Mr. Meagher's injuries.

3          4.32    In addition to providing evidence of and a separate basis for Plaintiff's negligence

4    and civil rights claims, King County's breach of the Hammer Agreement forms the basis for a

5    separate and independent breach of contract claim against King County.

## 5.   FIRST CAUSES OF ACTION

### (State Law Negligence Claims)

8          5.1.    Plaintiff realleges the allegations made in the preceding paragraphs and

9    incorporates the same as if fully set forth herein.

10         5.2.    The individually named Defendants and Defendant Does, all as employees of King

11   County working under color of law and during the scope of their employment, were negligent in

12   their classification and housing of Mr. Leae and Mr. Meagher in their failure to follow

13   KCDOAJD's own policies and the Hammer Agreement, and in their failure to reasonably protect

14   Mr. Meagher from the foreseeable attack of a notoriously violent inmate.  King County is liable

15   for the negligent acts and omissions of those employees and agents under vicarious liability

16   principles.

17         5.3.    As for the liability of the individually named Defendants and Defendant Does 1-

18   10, jailers have "a special relationship with inmates, creating an affirmative duty to provide for

19   inmate health, welfare, and safety." *Gregoire v. City of Oak Harbor,* 170 Wn.2d 628, 639, 244

20   P.3d 924 (2010).  This includes a duty to "protect an inmate from injury by third parties." *Id.* at

21   645.  Defendants' acts and omissions and the acts and omissions of any yet-to-be named Defendant

22   Does, breached that duty (as described above), and was a direct and proximate cause of Mr.

23   Meagher's damages.

## 6.       SECOND CAUSES OF ACTION

### (State Law Breach of Contract Claims)

26         6.1     Plaintiff realleges the allegations made in the preceding paragraphs and

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

1    incorporates the same as if fully set forth herein.

2        6.2    Under the Hammer Agreement, Defendant King County has a contractual

3    obligation to ensure that known violent inmates are appropriately housed separately from other

4    inmates.  KCDOAJD inmates are third party beneficiaries of that contractual obligation, and Mr.

5    Meagher was a KCDOAJD inmate when the misclassification occurred in this case, and when he

6    was assaulted.

7        6.3    The harm suffered by Mr. Meagher was a direct and proximate cause of King

8    County's breach of the Hammer Agreement, an enforceable contractual agreement to which Mr.

9    Meagher was a third party beneficiary.

## 7.    THIRD CAUSE OF ACTION

### (Constitutional Claims)

12       7.1    Plaintiff realleges the allegations made in the preceding paragraphs and

13   incorporates the same as if fully set forth herein.

14       7.2    Where a jail officer fails to take measures to protect a pretrial inmate from assaults

15   by other inmates in light of substantial evidence that the inmate is at high risk and the inmate is

16   injured by the officers' failure, the officer violates the inmate's Fourteenth Amendment due

17   process rights, forming the basis for a failure-to-protect claim under 42 USC § 1983.  *Castro*

18   provides the following elements for such a violation:

> (1) defendant made an intentional decision with respect to the conditions of
> plaintiff's confinement; (2) plaintiff was exposed to a "substantial risk of
> serious harm ... that could have been eliminated through reasonable and available
> measures"; (3) "defendant did not take reasonable available measures to abate that
> risk, even though a reasonable officer in the circumstances would have appreciated
> the high degree of risk involved—making the consequences of the defendant's
> conduct obvious;" and (4) by not taking those measures, defendant caused
> plaintiff's injuries.

24   *Castro*, summarized by *Townsel v. Madera Cnty. Dep't of Corr.*, 15-CV-00652-BAM(PC), 2017

25   WL 6371315, at *2 (E.D. Cal. Dec. 13, 2017).  The individually named Defendants, and the yet-

26   to-be named Doe Defendants 1-10, were working under the color of law as employees of King

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

County, and violated Mr. Meagher's due process rights as described above.  Those violations were the direct and proximate cause of Mr. Meagher's harm.

7.3    Should discovery in this case show that Mr. Meagher's due process violations resulted from the execution of KCDOAJD's policy or custom, and/or the inadequacy of training by KCDOAJD that amounted to deliberate indifference to the rights of inmates, Plaintiff reserves the right to amend the complaint to add a civil rights violation under 42 U.S.C. § 1983 against King County, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

## 8.    PRAYER FOR RELIEF AND DAMAGES

WHEREFORE, Mr. Meagher, by and through his Power of Attorney, requests a judgment against Defendants and Defendant Does 1-10 as follows:

a)   General and special damages, including for pain and suffering, in an amount to be proven at trial;

b)   Punitive damages as provided for by law;

c)    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1983 or as otherwise available under the law;

d)   All applicable interest on the judgment; and

e)   Other and further relief as the Court deems just and proper.

## 9.    JURY DEMAND

PLAINTIFF hereby demands a trial by jury.

DATED this 26th day of February, 2019.

FIRST AMENDED COMPLAINT - 21
NO: 2:19-CV-000259

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PETERSON | WAMPOLD
ROSATO | FELDMAN | LUNA

Tomás A. Gahan, WSBA No. 32779
Felix Gavi Luna, WSBA No. 27087
Attorneys for Plaintiff

FIRST AMENDED COMPLAINT - 22
NO: 2:19-CV-000259

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on the date shown below I electronically filed the foregoing document

3

with the Clerk of the Court using the CM/ECF system which will send notification of such filing

4

to all counsel of record.

5

6

**Dated**:  February 26, 2019.

7

*/s/Dana Vizzare*

8

Dana Vizzare, Paralegal
1501 4th Avenue, Suite 2800

9

Seattle, WA 98101
Ph. 206-624-6800

10

dana@pwrfl-law.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Peterson | Wampold
Rosato | Feldman | Luna
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3677
PHONE:  (206) 624-6800
FAX:  (206) 682-1415