1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  TOBY MEAGHER, et al.,                    CASE NO. C19-0259JLR

11                            Plaintiffs,     ORDER GRANTING IN PART
                                             AND DENYING IN PART
                   v.                        PLAINTIFF'S MOTION TO
12                                           AMEND THE COMPLAINT
     KING COUNTY, et al.,
13
                              Defendants.
14

15              I.    INTRODUCTION

16          Before the court is Plaintiff Toby Meagher's motion for leave to amend the

17  complaint.  (MTA (Dkt. # 56).)  Defendants King County and Officers Rodney Prioleau,

18  Brian O'Farrell, Theron McCain, Jr., Ronny Lee Kintner, J. Garcia, Gregg Curtis, and

19  Michael Kilbourne oppose the motion.  (*See generally* Resp. (Dkt. # 58).)  The court has

20  considered the motion, the relevant portions of the record, and the applicable law.  Being

21  //

22  //

fully advised,[1] the court GRANTS in part and DENIES in part the motion as set forth below.

## II.   BACKGROUND

### A.   Mr. Meagher's Factual Allegations

Mr. Meagher filed his original complaint in this action on February 22, 2019.  (*See* Compl. (Dkt. # 1).)  Mr. Meagher filed an amended complaint four days later (*see* FAC (Dkt. # 4)) and a second amended complaint—now the operative complaint—on June 24, 2019 (*see* SAC (Dkt. # 18)).  Mr. Meagher suffers from a schizoaffective disorder and brings his case through his mother Geraldine McNamara, who serves as Mr. Meagher's Power of Attorney.  (*Id.* ¶ 1.1.)  Mr. Meagher alleges that Defendants failed to protect him from a foreseeable attack by a fellow inmate in a King County Jail cell.  (*Id.* ¶ 1.1.)  On July 18, 2018, Mr. Meagher's cellmate, Troy Leae, severely beat Mr. Meagher, causing debilitating injuries.  (*Id.* ¶¶ 1.1-1.3.)  Mr. Meagher suffered "broken bones in his face, damaged facial nerves, broken teeth, lacerations and bruises all over his battered body," and a traumatic brain injury.  (*Id.* ¶ 1.3.)

Mr. Meagher alleges that Defendants could and should have prevented this assault on Mr. Meagher.  (*Id.* ¶ 1.4.)  Mr. Meagher alleges that King County Department of Adult and Juvenile Detention ("KCDOAJD") employees were aware of Mr. Leae's history of violence against fellow inmates and had changed Mr. Leae's housing classification to "ultra security" eight months before Mr. Leae attacked Mr. Meagher.

---

[1] No party requests oral argument (*see* Mot. at 1; Resp. at 1), the court finds oral argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

1   (*Id.*)  Mr. Meagher alleges that Defendants should have physically separated Mr. Leae

2   from other inmates based on his "ultra security" classification.  (*Id.*)  Instead, Defendants

3   placed Mr. Leae and Mr. Meagher in the same cell, where the beating occurred.  (*Id.*

4   ¶ 1.5.)  Mr. Meagher further alleges that Defendants ignored his repeated pleas that he

5   was afraid of Mr. Leae and his requests to be transferred away from Mr. Leae in the days

6   before he was attacked.  (*Id.* ¶ 1.7.)  Mr. Meagher further alleges that Defendants

7   misclassified Mr. Meagher as well as Mr. Leae.  (*Id.* ¶ 1.6.)  Based on Mr. Meagher's

8   schizoaffective disorder diagnosis, Mr. Meagher alleges that Defendants should have

9   housed Mr. Meagher in a cell separate from other inmates.  (*Id.*)

10          In addition to King County, Mr. Meagher's second amended complaint names

11   Defendants Rodney Prioleau, Brian O'Farrell, Theron McCain Jr., Ronny Lee Kintner,

12   Officer J. Garcia, Gregg Curtis, and Michael Kilbourne, as KCDOAJD employees.  (*Id.*

13   ¶ 2.3.)  The second amended complaint also names Doe Defendants who are "agents of

14   King County through their employment as jail workers for the KCDOAJD" and  "heard

15   Plaintiff Meagher's request to be moved to a separate cell to be protected from Leae."

16   (*Id.*)  Mr. Meagher brings claims for negligence against all Defendants, Section 1983

17   constitutional claims against the individual Defendants, and breach of contract against

18   Defendant King County.  (*Id.* ¶¶ 5.1-7.3.)  Mr. Meagher did not bring a claim under

19   *Monell v. Department of Social Services*, 436 U.S. 658 (1978), but the operative

20   complaint's section on "constitutional claims" contains the following paragraph relating

21   to a potential *Monell* claim:

22   //

ORDER - 3

Should discovery in this case show that Mr. Meagher's due process violations resulted from the execution of KCDOAJD's policy or custom, and/or the inadequacy of training by KCDOAJD that amounted to deliberate indifference to the rights of inmates, Plaintiff reserves the right to amend the complaint to add a civil rights violation under 42 U.S.C. § 1983 against King County, pursuant to [*Monell*, 436 U.S. 658].

(SAC ¶ 7.3.)

**B.    Facts Relevant to Mr. Meagher's Proposed Amendments**

Mr. Meagher now seeks leave to file a third amended complaint that adds three individual defendants and a *Monell* claim against Defendant King County and drops two individual defendants from the case.  (*See* Mot. at 1.)  Trial is set in this case for August 24, 2020.  (Sched. Order (Dkt. # 11) at 1.)  The deadline to amend pleadings expired on February 26, 2020.  (*Id.*)  Discovery closed on May 11, 2020, and the dispositive motions deadline was May 26, 2020.  (*Id.*; 4/17/20 Order (Dkt. # 54) at 2.)  Mr. Meagher contends that he has good cause to amend his complaint at this late date because despite his diligence he was unaware necessary information until recently.  (*See* Mot. at 1.)

The parties' counsel began discussing scheduling for several depositions in October 2019, including dates for Mr. Meagher to depose Dr. Ryan Quirk, the director of the psychiatric unit at King County Jail.  (*See* 5/14/20 Gahan Decl. (Dkt. # 57) ¶ 9, Ex. 2.)  On October 15, 2019, Defendants' counsel emailed Mr. Meagher's counsel:  "[F]or the past couple of days I've been trying to nail down dates for the Rule 30(b)(6) depositions and the [D]efendants.  I know you're aiming to leave by 12/16 so we're trying to fit everything in before that."  (*Id.*)  Mr. Meagher's counsel responded:  "We don't have to get them all done by then, just get a good start and maybe get them all

1  scheduled (even if there are some scheduled for after my return)." (*Id.*)  Defendants'

2  counsel then proposed a November 20, 2019, date for Mr. Quirk's deposition.  (*Id.*)  It is

3  unclear from the parties' evidence whether Mr. Meagher's counsel agreed to this date.

4       Mr. Meagher contends that despite sending notices to individual deponents—

5  presumably including Mr. Quirk—"Defendants did not provide for the testimony of any

6  witness to give responses on behalf of [Jail Health Services ("JHS")] until late February

7  of 2020."  (Mot. at 3 (citing 5/14/20 Gahan Decl. ¶ 9, Ex. 3).)  On February 21, 2020, the

8  parties filed a stipulated motion to continue the trial date and the pretrial deadlines in this

9  case on the basis that "additional time is needed to complete discovery and prepare for

10  trial."  (*See* 1st Stip. Mot. (Dkt. # 29) at 3.)  The court denied that motion, citing the

11  scheduling order in this case in which the court makes clear that its case deadlines are

12  "firm," that "[t]he court will alter these dates only upon good cause shown," and that

13  "failure to complete discovery within the time allowed is not recognized as good cause."

14  (2/25/20 Order (Dkt. # 30) at 2 (quoting Sched. Order (Dkt. # 11) at 2).)[2]

15       On March 2, 2020, Mr. Meagher took the Rule 30(b)(6) deposition of Dr.

16  Benjamin Sanders, the Medical Director for King County JHS.  Mr. Sanders testified that

17  the initial decision of whether an inmate should be housed in the psychiatric unit or the

18  general population at the jail "could be [made by] a registered nurse."  (*See* Mot. at 4

19  (citing 5/14/20 Gahan Decl. ¶ 9, Ex. 9 ("Sanders Dep.") at 27:2-28:4).)  Mr. Meagher

20  //

21  _____

22  [2] On a second stipulated motion, the court allowed the parties an additional two weeks of
discovery based on challenges caused by the COVID-19 pandemic.  (*See* 4/17/20 Order (Dkt.
# 54) at 3.)

ORDER - 5

1    contends that this testimony "factually places the conduct of Christopher Derrah, the

2    nurse who—apparently entirely of his own accord—sent the severely mentally disabled

3    Mr. Meagher into general population, directly at issue." (Mot. at 4.) Dr. Sanders further

4    testified that the question of where a patient's evaluation goes when the patient returns

5    from Western State Hospital ("WSH") to the jail "is a question for Dr. Quirk," because

6    Dr. Sanders is "not intimately familiar with the process for how that paperwork gets

7    reviewed and by whom." (*See* Sanders Dep. at 44:17-44:23.) Dr. Sanders further

8    testified that Dr. Quirk bears the responsibility to review the WSH evaluations. (*See id.*

9    at 57:16-58:4.)

10        It took much longer for Defendants to produce Dr. Quirk for his deposition. On

11   March 5, 2020, Mr. Meagher's counsel expressed frustration to Defendants that it had

12   been like "pulling teeth" to get Defendants to schedule the remaining depositions, and

13   that after Defendants cancelled Dr. Quirk's deposition—a deposition that Mr. Meagher's

14   counsel had been asking for "for several months"—Mr. Meagher's counsel was forced to

15   unilaterally set a date. (*See* 3/27/20 Gahan Decl. ¶ 2, Ex. 12.) Mr. Meagher's counsel

16   further stated that he could not "wait until the end of March" for Defendants to give Mr.

17   Meagher dates for depositions he had been attempting to schedule with Defendants "since

18   January 15," "particularly when [Defendants] have not done so up until this point with no

19   explanation." (*Id.*)

20        On March 10, 2020, the date after Mr. Meagher's counsel received Mr. Sanders'

21   deposition transcript, Mr. Meagher's counsel wrote to Defendants' counsel and stated

22   that he:

1
2
3
4

> will be asking the Court for leave to amend the complaint to include
> Christopher Derrah, R.N. (the nurse whom – according to your discovery
> responses – approved Mr. Meagher going to GP upon his return from
> Western State Hospital), and Dr. Quirk (the official in charge of the
> psychiatric department at the jail) as defendants.  Following Dr. Sanders
> deposition, it became clear that both of these individuals need to be
> personally named in the suit.

5

(*See* 5/14/20 Gahan Decl. ¶ 9, Ex. 10.)  The letter goes on to inform Defendants that Mr.

6

Meagher intended to add as Defendants "the person or persons tasked with receiving

7

and/or reviewing the [WSH] evaluations from Mr. Meagher and Mr. Leae upon the return

8

of each from [WSH] in the spring and summer of 2018."  (*Id.*)  However, Mr. Meagher's

9

counsel was unaware of the identities of those individuals because none of the witnesses

10

deposed so far "knew this information, and all deferred to Dr. Quirk."  (*Id.*)  The letter

11

goes on:  "Unfortunately, because the 30(b)(6) testimony of Dr. Quirk was suddenly

12

canceled last Friday, [Mr. Meagher] was unable to learn the name or names of the

13

person(s)."  (*Id.*)

14

The letter then informs Defendants that Mr. Meagher intended to add Dr. Quirk

15

and Mr. Derrah as defendants after discovering the identity of the additional person or

16

persons Mr. Meagher sought to add:

17
18
19
20

> Rather than ask for leave to amend to add Mr. Derrah and Dr. Quirk
> immediately upon John's return from his leave (out of respect for his notice
> of unavailability, I would not file it sooner), and then move *again* for leave
> to add the name or names of the individual(s) who received/reviewed the
> Western State Hospital evaluations, I am going to wait until after the
> deposition of Dr. Quirk (when the information should be revealed) to ask for
> leave to amend to add all of the parties discussed above.

21

(*Id.*)  The letter states that although Mr. Meagher would wait to file his motion for leave

22

to amend, he wanted to provide Defendants "notice of the fact that I will be asking to add

1   Mr. Derrah and Dr. Quirk as soon as I can while still respecting John's notice of

2   unavailability, with the further understanding that as soon as I learn the names of the

3   parties responsible for receiving and/or reviewing the WSH evaluations, I will file the

4   motion for leave to amend." (*Id.*)

5          On March 18, 2020, Defendants informed Mr. Meagher's counsel that Dr. Quirk's

6   deposition would have to be cancelled again due to the COVID-19 pandemic. (*See* Mot.

7   at 5 (citing 3/27/20 Gahan Decl. (Dkt. # 44) ¶ 2, Ex. 12 at 81-82).) Mr. Meagher's

8   counsel agreed to accommodate this delay, provided that Defendants:

9          will not raise a 'surprise' or 'lack of notice' or other timeliness objection
           (other than the motion is outside the deadline to amend as a matter of course)
10         to my motion to amend the complaint after [Dr.] Quirk's deposition adding
           [Dr.] Quirk, [Mr.] Derrah, and the name of the person or persons who
11         received/reviewed the WSH evaluations from [Mr.] Meagher and [Mr.] Leae
           (as noted in my letter sent last week). Obviously, you still preserve any other
12         objections to the motion.

13   (*Id.* at 82.) Defendants responded: "We are on the same page." (5/29/20 Gahan Decl.

14   (Dkt. # 72) ¶ 3, Ex. 1.)

15         Dr. Quirk was not deposed until May 11, 2020, the discovery deadline and a date

16   that Dr. Quirk testified was chosen for him by Defendants' counsel. (*See* Mot. at 6

17   (citing 5/14/20 Gahan Decl. ¶ 2).) When Mr. Meagher's counsel learned that Defendants

18   would only offer Dr. Quirk on May 11, 2020, Mr. Meagher's counsel sent an email to

19   Defendants' counsel that asked them to at least have Dr. Quirk provide "the name of the

20   person or persons at JHS responsible for reviewing both of Mr. Leae's WSH evaluations

21   sent to the jail in 2018." (*See* 5/14/20 Gahan Decl. ¶ 9, Ex. 11.) Mr. Meagher contends

22   that "a few days later, Defendants' counsel indicated that he had received an email from

1   Dr. Quirk with the answer to the question, that it was a 'complicated answer,' and that he

2   was going to review it and forward it to Plaintiff's counsel." (*See id.* ¶ 3.)  Defendants'

3   counsel never forwarded the email.  (*See id.*)[3]

4       Dr. Quirk's deposition revealed the identity of the person who reviewed Mr.

5   Leae's WSH evaluations to be JHS Advanced Registered Nurse Practitioner ("ARNP")

6   Cathleen Bozek, "who reviewed a transport order from WSH on April 26, 2018 regarding

7   Mr. Leae, warning that Mr. Leae 'has been assaultive towards staff and peers about once

8   a week.'" (*See* Mot. at 7 (citing 5/14/20 Gahan Decl. ¶ 6).)  Mr. Meagher contends that

9   "Dr. Quirk's deposition testimony revealed for the first time that even though ARNP

10  Bozek wrote this in Mr. Leae's JHS chart, she never went on to share that information

11  with Classifications." (*See id.* (citing 5/14/20 Gahan Decl. ¶ 6).)

12      Dr. Quirk's deposition revealed details about his own involvement in Mr.

13  Meagher's confinement as well.  Dr. Quirk testified that he was the person who reviewed

14  Mr. Meagher's June 25, 2018 WSH evaluation, and that he did so on June 26, 2018.  (*See*

15  5/14/20 Gahan Decl. ¶ 4.)  Dr. Quirk further testified that that when he reviewed the

16  evaluation, he did not enter any of the information related to Mr. Meagher's psychiatric

17  acuity into his JHS records, nor did he otherwise make it available for review or flag Mr.

18  Meagher's acute mental health problems described in the report for any other JHS

19  employee, including Mr. Derrah, the nurse who ultimately made the decision that Mr.

20  Meagher was not an appropriate candidate for placement in the psychiatric unit.  (*Id.*)

21

22      [3] Defendants do not contest the accuracy of—or even reference—this allegation.  (*See generally* Resp.)

1   Separately, on April 24, 2020, Defendant Gregg Curtis testified that King County

2   policy does not allow Classifications staff tasked with safely housing inmates "to go to

3   public health and request protected medical information." (*See* 5/14/20 Gahan Decl. ¶ 7.)

4   Mr. Curtis added that any policy permitting Classifications to consult with JHS regarding

5   information about an inmate is "a one-way sharing of information"—from JHS to

6   Classifications—and "[C]lassification staff, generally, do not have the ability to review

7   patient medical records." *Id.* Several months earlier Mr. Curtis testified that information

8   from WSH about inmates' propensity for violence affected housing placements. (*See*

9   5/29/20 Gahan Decl. ¶ 3, Ex. 6 ("Curtis Dep.") at 104:14-24.) At his deposition, Dr. Quirk

10  testified that while such information "can be communicated" by JHS to Classifications,

11  there is no requirement or policy that JHS do so or that it should do so unless "asked to

12  contribute" by Classifications in the placement decision. (Quirk Dep. at 225:13-227:16,

13  228:9-12.) Mr. Meagher contends that this new information justifies the late addition of a

14  *Monell* claim based on King County's apparent policy "preventing such information

15  sharing when prompted by Classifications." (*See* Mot. at 8.)

16              **III.    ANALYSIS**

17  Mr. Meagher seeks leave to file a third amended complaint that (1) removes

18  Defendants Brian O'Farrell and Theron McCain, Jr.; (2) replaces "Doe" defendants with

19  three new named Defendants: Ryan Quirk, Chris Derrah, and Cathleen Bozek; and (3)

20  adds a *Monell* claim against Defendant King County. (*See* Mot. at 1; *see also* Mot. Ex. A

21  ("Prop. TAC").) The court sets forth the legal standard for amending complaints before

22  analyzing Mr. Meagher's motion.

1    **A.    Legal Standard**

2        Once the court files a pretrial scheduling order pursuant to Federal Rule of Civil

3    Procedure 16 and the deadline for amending a pleading or joining a party expires, a

4    party's motion to amend a pleading or join an additional party is governed by Rule 16.

5    *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).  Under

6    Rule 16, a party must show "good cause" for an amendment to justify modifying the case

7    schedule.  Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause

8    and with the judge's consent."); *see also Johnson*, 975 F.2d at 608.  "Rule 16(b)'s 'good

9    cause' standard primarily considers the diligence of the party seeking the amendment."

10   *Johnson*, 975 F.2d at 609.  To show "good cause" a party must show that it could not

11   meet the deadline imposed by the scheduling order despite its diligence.  *Id.*  "[F]ailure to

12   complete discovery within the time allowed is not recognized as good cause."  (Sched.

13   Order at 2.)

14       If a party shows "good cause" to amend the case schedule under Rule 16, it must

15   then demonstrate that amending the pleading at issue is proper under Rule 15.  *See id.* at

16   608; *MMMT Holdings Corp. v. NSGI Holdings, Inc.*, No. C12-01570RSL, 2014 WL

17   2573290, at *2 (W.D. Wash. June 9, 2014).  Under Rule 15, the court should "freely

18   give" leave to amend a pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).

19   Five factors are used to assess the propriety of a motion for leave to amend:  (1) bad faith,

20   (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5)

21   whether the party has previously amended its pleading.  *Allen v. City of Beverly Hills*,

22   //

1   911 F.2d 367, 373 (9th Cir. 1990) (citing *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d

2   1149, 1160 (9th Cir. 1989)).

3   **B.    Plaintiffs' Motion to Amend the Complaint**

4         The deadline to amend pleadings expired on February 26, 2020. (*See* Sched. Order

5   at 1.)  Therefore, Mr. Meagher must show good cause under Rule 16 to succeed on his

6   motion.

7         1.  Mr. O'Farrell and Mr. McCain

8         Mr. Meagher seeks to amend his complaint to remove Defendants O'Farrell and

9   McCain.  (*See* Mot. at 8.)  Defendants do not directly oppose Mr. Meagher's request, but

10  instead respond that Mr. Meagher's "intent to dismiss Brian O'Farrell and Ronny Lee

11  Kintner is warranted although it is unnecessary to do so in the form of a motion for leave

12  to amend a complaint."[4]  Because Defendants do not oppose removing Mr. O'Farrell and

13  Mr. McCain, the court GRANTS Mr. Meagher leave to amend his complaint to remove

14  these two Defendants.

15        2.  Ms. Bozek

16        Mr. Meagher shows good cause to add Ms. Bozek as a Defendant, even at this late

17  stage of the litigation.  Mr. Meagher acted diligently in seeking Ms. Bozek's identity and

18  role from Defendants for months.  After Defendants cancelled Mr. Quirk's February 2020

19  deposition, Mr. Meagher wrote to Defendants on March 10, 2020, that Mr. Meagher

20  //

21        [4] In an apparent scrivener's error, Defendants mistakenly refer to Mr. Kintner—who Mr.
22  Meagher does not intend to drop as a Defendant—instead of Mr. McCain, who Mr. Meagher
does intend to drop.

1    intended to add as defendants "the person or persons tasked with receiving and/or

2    reviewing the Western State Hospital evaluations from Mr. Meagher and Mr. Leae upon

3    the return of each from Western State Hospital in the spring and summer of 2018."

4    (5/14/20 Gahan Decl. ¶ 9, Ex. 10.)  However, Mr. Meagher was unaware of the identities

5    of those individuals because none of the witnesses deposed so far "knew this information,

6    and all deferred to Dr. Quirk."  (*Id.*)  The letter goes on:  "Unfortunately, because the

7    30(b)(6) testimony of Dr. Quirk was suddenly canceled last Friday, [Mr. Meagher] was

8    unable to learn the name or names of the person(s)."  (*Id.*)

9            The evidence revealed Ms. Bozek to be the person "tasked with receiving and/or

10   reviewing the Western State Hospital evaluations from Mr. Meagher and Mr. Leae" (*see

11   id.*) but not until Defendants finally produced Dr. Quirk for a deposition on the discovery

12   deadline, May 11, 2020.  Correspondence between the parties shows that Mr. Meagher

13   was diligent in attempting to obtain Ms. Bozek's identity but that Defendants thwarted

14   those attempts.  After cancelling or postponing Dr. Quirk's deposition several times, Mr.

15   Meagher's counsel agreed to accommodate Defendants' delay provided that Defendants

16   "will not raise a 'surprise' or 'lack of notice' or other timeliness objection (other than the

17   motion is outside the deadline to amend as a matter of course) to [Mr. Meagher's] motion

18   to amend the complaint after [Dr.] Quirk's deposition adding [Dr.] Quirk, [Mr.] Derrah,

19   and the name of the person or persons who received/reviewed the WSH evaluations from

20   Meagher and Leae (as noted in my letter sent last week)"—revealed during Dr. Quirk's

21   deposition to be Ms. Bozek.

22   //

ORDER - 13

1    Dr. Quirk was not deposed until May 11, 2020, the discovery deadline and a date

2    that Dr. Quirk testified was chosen for him by Defendants' counsel.  (*See* Mot. at 6

3    (citing 5/14/20 Gahan Decl. ¶ 2).)  Even so, Mr. Meagher's counsel was diligent in

4    attempting to discover Ms. Bozek's identity.  Mr. Meagher's counsel sent an email to

5    Defendants that asked them to at least have Dr. Quirk provide "the name of the person or

6    persons at JHS responsible for reviewing both of Mr. Leae's WSH evaluations sent to the

7    jail in 2018."  (*See id.* ¶ 9, Ex. 11.)  Mr. Meagher contends that "a few days later,

8    Defendants' counsel indicated that he had received an email from Dr. Quirk with the

9    answer to the question, that it was a 'complicated answer,' and that he was going to

10   review it and forward it to [Mr. Meagher's] counsel."  (*See id.* ¶ 3.)  Defendants never

11   sent the email.  (*See id.*)  In sum, Mr. Meagher sought to identify Ms. Bozek for months

12   and through multiple communications with Defendants; and would not have needed to do

13   so had Defendants not postponed Dr. Quirk's deposition multiple times.  Therefore, the

14   court concludes that Mr. Meagher was diligent in seeking the information necessary to

15   add Ms. Bozek as a Defendant.  *See* Fed. R. Civ. P. 16.

16   Defendants point out that Ms. Bozek's name was included in Mr. Leae's medical

17   that Defendants produced on October 28, 2019.  (*See* Resp. at 9 (citing Walters Decl.

18   (Dkt. # 59) ¶ 6, Ex. D).)[5]  Defendants cite one document to support this contention—a

19   "[p]rogress [r]eport" ("Progress Report") for Mr. Leae dated April 26, 2018, that states

20

21   ―――――――――
     [5] Although Defendants cite to Exhibit C of Ms. Walters' declaration, that exhibit does not
     contain Ms. Bozek's name.  (*See* Walters Decl. ¶ 6, Ex. C.)  Instead, Defendants' descriptions

22   are consistent with Exhibit D, a "[p]rogress [n]ote" for Mr. Leae, that includes Ms. Bozek's
     name.  Therefore, the court cites to this document as "Walters Decl. ¶ 6, Ex. D."

1  Mr. Leae "has been assaultive towards staff and peers about once a week and is

2  electronically signed by Ms. Bozek." (*Id.*)  Although the Progress Report evaluates Mr.

3  Leae's psychiatric condition and medications, it does not discuss or refer to his housing

4  placement and does not provide any details regarding Ms. Bozek's role.  (*See id.*)  Mr.

5  Meagher admits that he obtained the Progress Report in discovery, but "there was no way

6  to understand [Ms. Bozek's] role or confirm whether the warning was shared and what

7  her obligations were without the deposition of the JHS designee, Dr. Quirk." (*See* Reply

8  at 4.)  The court agrees.

9         The court further concludes that the Rule 15 factors weigh in favor of allowing the

10  amendment.  *See Allen*, 911 F.2d at 373 (stating that courts consider the following factors

11  under Rule 15:  (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4)

12  futility of amendment, and (5) whether the party has previously amended its pleading).

13  Mr. Meagher has not shown bad faith or undue delay, the amendment is not futile, and

14  Defendants have not shown that they would be prejudiced by the amendment.  With

15  respect to prejudice, Mr. Meagher's counsel put Defendants on notice on March 10,

16  2020, that he intended to add the person in Ms. Bozek's role as a Defendant.  Moreover,

17  Defendants communicated with Dr. Quirk regarding Ms. Bozek's role but failed to abide

18  by their promise to provide Dr. Quirk's answer to Mr. Meagher, even as Defendants

19  delayed Dr. Quirk's deposition.  Defendants cannot now claim prejudice that Mr.

20  Meagher seeks to add Ms. Bozek as a defendant a mere three days after learning Ms.

21  Bozek's identify from Dr. Quirk's May 11, 2020, deposition.  In sum, the court GRANTS

22  Mr. Meagher leave to add Ms. Bozek as an individual defendant.

1          3. <u>Dr. Quirk</u>

2          Mr. Meagher also shows good cause to add Dr. Quirk as an individual defendant.

3  Mr. Meagher did not learn the information necessary to add Dr. Quirk until Dr. Sanders'

4  March 9, 2020, deposition.  Dr. Sanders testified that the decision about where the WSH

5  evaluations submitted to the jail "go" once they are submitted to JHS is up to Dr. Quirk.

6  (Sanders Dep. at 44:17-23.)  Dr. Sanders added that it is the responsibility of Dr. Quirk

7  and those in his department to review the WSH evaluations.  (*Id.* at 57:16-58:4.)  A day

8  after receiving Dr. Sanders' deposition transcript, Mr. Meagher notified Defendants that

9  he intended to add Dr. Quirk as a Defendant but would wait to do so until learning the

10  identity of the person who was ultimately revealed to be Ms. Bozek.  (*See* 5/14/20 Gahan

11  Decl. ¶ 9, Ex. 10.)

12          Defendants' response does little to refute Mr. Meagher's diligence with respect to

13  Dr. Quirk.  It focuses primarily on the reason Dr. Quirk's deposition was delayed the

14  final time—the COVID-19 pandemic—but does not explain why the deposition was

15  cancelled earlier; why Defendants provided only May 11, 2020, the discovery deadline,

16  for the deposition; what information Mr. Meagher had about Dr. Quirk's role before Dr.

17  Sanders' deposition that should have identified him as a proper defendant; why the new

18  information revealed about Dr. Quirk's role in Mr. Sanders' deposition does not justify

19  amendment; or why Defendants would be prejudiced by adding Dr. Quirk as a defendant

20  when Mr. Meagher notified Defendants immediately after Dr. Sanders' deposition that he

21  intended to do so.  (*See* Resp. at 9-10.)  Indeed, Defendants' entire response to the portion

22  //

1    of Mr. Meagher's motion regarding Dr. Quirk consists of a single paragraph with no

2    citations to the record.  (*See id.*)

3        The court further concludes that the Rule 15 factors weigh in favor of allowing

4    amendment.  *See Allen*, 911 F.2d at 373.  Mr. Meagher has not shown bad faith or undue

5    delay, the amendment is not futile, and Defendants have not shown that they would be

6    prejudiced by the amendment.  Accordingly, the court GRANTS Mr. Meagher leave to

7    add Dr. Quirk as a defendant.

8        4.  Mr. Derrah

9        The court finds that Mr. Meagher does not show good cause for amending the

10   complaint to add Mr. Derrah as a defendant.  In contrast to Ms. Bozek and Dr. Quirk, Mr.

11   Meagher's counsel was or should have been aware of Mr. Derrah's identity and role in

12   placing Mr. Meagher in the general jail population at least as far back as July 31, 2019.

13   Mr. Derrah's last name appears in documents Defendants produced to Mr. Meagher on

14   May 31, 2019, including Mr. Meagher's classification records.  (*See* Walters Decl. (Dkt.

15   # 59) ¶ 5, Ex. B (stating "FROM WASH PER RN DERRAH < OK FOR [general

16   population ("GP")]").)  Defendants provided an interrogatory response to Mr. Meagher

17   on July 31, 2019, that also includes Mr. Derrah's name and an indication of his role as it

18   pertained to Mr. Meagher.  (*See id.* ¶ 6, Ex. C (Interrogatory response stating:  "Upon

19   [Mr. Meagher's] return from WSH on 07/02/l8, Christopher Derrah, RN cleared [Mr.

20   Meagher] from Psych housing as eligible for GP.").)

21       Moreover, a document Defendants provided in discovery entitled "Immediate

22   Transfer/Housing Alert" states that it is "[r]equested by:  Christopher Derrah, RN,"

1    includes Mr. Derrah's signature, and states in clear handwriting: "OK for GP." (*See id.*)

2    That Mr. Meagher may have learned additional information regarding the scope of Mr.

3    Derrah's authority from Dr. Sanders' and Dr. Quirk's depositions is of little import given

4    that Mr. Meager should already have been aware that Mr. Derrah made a decision that is

5    at the heart of this case—placing Mr. Meagher in the general population instead of away

6    from other inmates. Therefore, the court DENIES Mr. Meagher's motion as it pertains to

7    Mr. Derrah.

8        5. *Monell* Claim

9        Mr. Meagher contends that new information from Mr. Curtis' and Dr. Quirk's

10   depositions justifies the late addition of a *Monell* claim based on King County's apparent

11   policy of "preventing . . . information sharing when prompted by Classifications." (*See*

12   Mot. at 8.) Mr. Meagher contends that his proposed *Monell* claim "requires no additional

13   discovery, is consistent with Plaintiff's other claims, and is no surprise to Defendants."

14   (*See* Reply at 6.) In response, Defendants argue that "the role WSH evaluations played in

15   classification decisions as to housing inmates upon their return from [WSH] was

16   established well before the case schedule deadlines and did not require the testimony of

17   Dr. Quirk." (Resp. at 10.) Defendants further argue that even if Mr. Meagher shows good

18   cause under Rule 16, the *Monell* claim should fail the Rule 15 analysis because it is futile.

19   (*See id.* at 10-12.)

20       The court concludes that Mr. Meagher fails to show good cause to add a *Monell*

21   claim. The operative complaint suggests that Mr. Meagher was considering adding a

22   *Monell* claim as early as July 24, 2019. (*See* SAC ¶ 7.3.) Mr. Meagher fails to justify why

ORDER - 18

1    ten months of subsequent discovery was insufficient to determine whether to do so.  (*See*

2    *generally* Mot.; Reply.)   Moreover, Mr. Meagher's contention that Mr. Curtis' and Dr.

3    Quirk's depositions revealed King County's information-sharing "policy" for the first time

4    is belied by Mr. Meagher's motion itself, which states that Mr. Meagher's "experts have

5    opined that the failure to share safety information between JHS and Classification *both*

6    *ways*, played a significant role in the outcome here, and that such a *policy* places individuals

7    like Mr. Meagher in danger of being attacked by inmates whose violent proclivities are

8    known by JHS but not sought by Classifications."   (*Id.* at ¶ 8 (second italics added.)

9    Although Mr. Meagher does not submit a copy of the referenced expert report, the expert

10   disclosure deadline expired on February 26, 2020. (*See* Sched. Order at 1.)   Therefore, Mr.

11   Meagher was aware of the alleged policy against two-way information sharing for at least

12   two months before seeking this amendment.

13        Moreover, Mr. Meagher's March 10, 2020, letter to Defendants—which put

14   Defendants on notice that Mr. Meagher intended to seek leave to add additional individual

15   Defendants—expressly stated that Mr. Meagher did not intend to add additional allegations

16   or case theories:  "[T]he amendment, if permitted, will not change anything substantive

17   about the remaining discovery in the case or our allegations."  (*See* 2nd Gahan Decl. ¶ 9,

18   Ex. 10.)

19        Even if Mr. Meagher met Rule 16's good cause standard, the court would deny

20   leave to amend under Rule 15's standard as well.  Although there is no indication of bad

21   faith by Mr. Meagher, the remaining factors weigh against amendment. *See Allen*, 911

22   F.2d at 373.  Mr. Meagher engaged in undue delay in seeking this amendment.

1    Defendants would be prejudiced by having to defend an entirely new claim just a few

2    months before trial—particularly when Mr. Meagher's counsel represented on March 10,

3    2020, that he did not intend to add any new allegations or case theories.  Mr. Meagher has

4    twice previously amended his complaint.  (*See* FAC (Dkt. # 4); SAC.)  Finally, the

5    amendment is likely futile.  Although Mr. Meagher describes a failure of two-way

6    information sharing as a "policy," his proposed amendment describes the discretionary

7    decisions of individual King County employees in "deliberately not seeking, requesting

8    or reviewing" inmate health information.  (*See* Prop. TAC ¶ 7.3.)  Further, Mr. Meagher

9    does not allege the existence of any written policy, nor does he allege that the employees'

10   alleged failure to share information resulted from "a deliberate choice to follow a course

11   of action . . . made from among various alternatives by the official or officials responsible

12   for establishing final policy with respect to the subject matter in question."  *See Gillette v.*

13   *Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992); *see also id.* ("The cases make clear that

14   the unconstitutional discretionary actions of municipal employees generally are not

15   chargeable to the municipality under section 1983.)  Therefore, the court DENIES Mr.

16   Meagher leave to add a *Monell* claim.

17                      **IV.    CONCLUSION**

18          For the foregoing reasons, the court GRANTS in part and DENIES in part Mr.

19   Meagher's motion (Dkt. # 56).  Within seven (7) days of the date of this order, Mr.

20   Meagher may file a third amended complaint that adheres to the rulings in this order.

21   //

22   //

1   Specifically, the amended complaint may (1) remove Mr. O'Farrell and Mr. McCain as

2   defendants and (2) add Dr. Quirk and Ms. Bozek as individual defendants.

3          Dated this 10th day of June, 2020.

4

5

6                                                  JAMES L. ROBART
                                                   United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22